UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:06CV-150-R

DAN ELLIOTT                                                                                          PLAINTIFF

v.

MURRAY-CALLOWAY COUNTY PARKS                                                  DEFENDANTS
AND RECREATION DEPARTMENT, et al.

## MEMORANDUM OPINION

This matter is before the Court on Defendants Jason Lovett, Bill Bailey, Cliff Finnery, Melodie Cunningham, Kenneth Imes, Steve Lax, Bobby Stubblefield, Johnny Gingles, Krista Thompson, Chad Lawson, David Hornback, Kevin Lamb, Larry Elkins, and Brad Steele's Motion for Partial Summary Judgment (Docket #49) and Defendants City of Murray, Hugh Massey, and Danny Hudspeth's Motion for Summary Judgment (Docket #51).[1]  Plaintiff filed a single response to both motions (Docket #54) to which Defendants Lovett, Bailey, Finnery, Cunningham, Imes, Lax, Stubblefield, Gingles, Thompson, Lawson, Hornback, Lamb, Elkins, and Steele replied (Docket #56).  This matter is now ripe for adjudication.  For the reasons that follow, Defendants' Motion for Partial Summary Judgment is GRANTED IN PART and DENIED IN PART and Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Plaintiff was employed by the Murray-Calloway County Parks and Recreation Department ("Parks Department") in the position of maintenance supervisor for a period of approximately five

---

[1] Defendants City of Murray, Massey, and Hudspeth adopt and incorporate by reference their co-defendants' Motion for Partial Summary Judgment.

months in 2005. His immediate supervisor was Defendant Brad Steele. In addition to his employment with the Parks Department, Plaintiff operated a part-time business in which he transported a mechanical bull to local festivals on the weekends. One weekend, he employed Steele to assist him in his amusement business. According to Plaintiff, Steele demanded that he be allowed further part-time work in the amusement business and their relationship at the Parks Department deteriorated with Steele threatening Plaintiff's employment.

Plaintiff went to the Murray City Hall to complain about Steele's demands and threats. Plaintiff was referred to the Parks Department Board of Directors (the "Board") personnel committee chair, Sherrie Holbrook. When Plaintiff returned to the Park office after attempting to lodge a complaint, Steele suspended him for three days without pay for "exhibiting anger, disrespect and insubordination." Plaintiff claims that during his suspension and after his return, Steele attempted to solicit complaints from co-workers, subordinates, and a former employee against Plaintiff. Plaintiff also states that Steele constantly watched him and created work obstacles interfering with his job performance.

Responding to Plaintiff's complaint, Holbrook advised Plaintiff that she had arranged an informational meeting with the Board on October 12, 2005. At the beginning of the meeting, it was announced that this was an informal information gathering session and the secretary who normally recorded such meetings was excused. Plaintiff was allowed fifteen minutes to tell members of his concerns. Holbrook stated that no questions would be allowed by anyone. At no time was Plaintiff informed that this meeting was to address any concerns related to his work performance and at no time was he advised that this was a pre-termination hearing which could result in discipline or termination. Plaintiff understood that Holbrook had arranged the meeting in order for him to present

concerns regarding Steele's conduct. Plaintiff had no legal representation present. Steele met with the Park Board in private with an attorney present after Plaintiff presented his concerns.

At the meeting, Plaintiff informed the Board that Steele was demanding that Plaintiff allow him to participate in and be paid money from Plaintiff's part time business as a condition of employment and threatening Plaintiff with unemployment if Plaintiff did not agree. Plaintiff also told the Board that Steele was treating female employees inappropriately and making sexual remarks to them, that Steele was falsifying grant reports, and that he was misusing and misappropriating funds and property of the Board for his own use. Plaintiff specifically mentioned Steele had been obtaining cash from the Board's credit card and using the park backhoe for his personal projects. Plaintiff also told Board members that Steele was intentionally submitting incorrect grant reports to the federal government concerning employees working on the trail project in order to obtain grant monies. Plaintiff gave the example of inmates signing statements that they were paid employees. Plaintiff provided the Board with witness names to verify his statements.

Following the meeting, Plaintiff returned to work where he states that Steele harassed him daily. Plaintiff, other park employees, and inmate workers complained to the Calloway County Attorney regarding Steele's behavior.

On October 27, 2005, the Board held a special meeting in which, by a vote of five to four, it authorized Steele to suspend and then fire Plaintiff for insubordination. Three Board members abstained and one Board member voted no. At the same meeting, the Board issued a written warning to Steele.

The Parks Department's Policy and Procedure Handbook states that all employees "are generally considered to be an employee at will and may be terminated anytime and for any lawful

reason." The Handbook specifically disclaims any contractual intent and notes that it is simply a guideline. This Handbook was provided to Plaintiff at the beginning of his employment and Plaintiff executed an acknowledgment of its receipt.

After the Board voted to terminate Plaintiff's employment, he initiated this litigation seeking compensatory and punitive damages as well as reinstatement. On November 15, 2006, the Court entered a scheduling order giving the parties until August 1, 2007, to complete all discovery. On April 12, 2007, Defendants filed their motion for summary judgment. The motion seeks dismissal of the Complaint in its entirety and is based, in part, on Defendants' assertion of qualified immunity. On April 30, 2007, Plaintiff filed a motion for discovery. Plaintiff requested that he be permitted to continue usual discovery pursuant to the scheduling order and the Federal Rules of Civil Procedure, or in the alternative, that he be permitted to obtain relevant personnel documents and other memoranda related to the claims in the possession of Defendants and take depositions of all members of the Board, present and past, along with Board employees, present and past. On September 28, 2007, Plaintiff filed a motion for leave to file an amended complaint. This Court granted that motion on October 25, 2007, over Defendants' objection. In that same order this Court remanded the April 12, 2007 motion for summary judgment and allowed the Defendants to file a dispositive motion concerning qualified immunity only.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." In determining whether summary judgment is appropriate,

4

a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996). Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

**DISCUSSION**

"Government officials performing discretionary functions are entitled to qualified immunity from civil suits for damages arising out of the performance of their official duties 'as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Watkins v. City of Southfield*, 221 F.3d 883, 887 (6th Cir. 2000) (quoting *Anderson v.*

*Creighton*, 483 U.S. 635, 638 (1987)). Qualified immunity does not apply to local entities or protect individuals in their official capacities. *Owen v. City of Independence*, 445 U.S. 622, 685-86, 686 n.18 (1980). A court evaluating a claim of qualified immunity must first determine whether the plaintiff has alleged the deprivation of a constitutional right, and, if so, whether it was a clearly established right that a reasonable official under the circumstances should know. *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity." *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).

**I.     FIRST AMENDMENT**

Plaintiff alleges that he was discharged from employment because he complained to the Board concerning Steele's conduct in various respects. Plaintiff alleges that Board member Holbrook advised him that she had arranged an informational meeting of the Board to investigate the difficulties between Plaintiff and Steele. Plaintiff was called upon to address the directors with his concerns at that meeting. Plaintiff used the opportunity to make various complaints concerning Steele, his supervisor. Plaintiff asserts that his suspension and discharge were in retaliation for these complaints and thus violated his First Amendment rights. Defendants assert that Plaintiff's cause of action fails because the complaints he voiced are not speech protected by the First Amendment.

The Sixth Circuit has developed a three-step test for analyzing a public employee's claim of First Amendment retaliation. The plaintiff must first show that, as a matter of law, the speech at issue was protected. *Haynes v. City of Circleville*, 474 F.3d 357, 362 (6th Cir. 2007), *rehearing en banc denied*, No. 06-3070 2007 U.S. App. LEXIS 163494 (6th Cir. June 15, 2007), *cert. denied*, No. 07-328, 2007 U.S. LEXIS 12027 (Nov. 5, 2007). The plaintiff must next show that the termination

"would chill an ordinary person in the exercise of his First Amendment rights." *Id.* at 363 (quoting *Taylor v. Keith*, 338 F.3d 639, 643 (6th Cir. 2003)). Finally, the plaintiff "must present sufficient evidence to create a genuine issue as to whether his speech was a substantial or motivating factor in the employer's decision to discipline or dismiss." *Id.* (quoting *Taylor*, 338 F.3d at 643).

"[P]ublic employees do not surrender all their First Amendment rights by reasons of their employment." *Garcetti v. Ceballos*, _ U.S. _, 126 S. Ct. 1951, 1957 (2006). In order for a public employee's speech to be protected, (1) he must speak as a citizen and not in a more limited role as a government employee; and (2) the speech must be directed toward a matter of public concern. *Connick v. Myers*, 461 U.S. 138, 146 (1983). The Supreme Court recently clarified the first prong of the test in *Garcetti v. Ceballos*, holding that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." 126 S. Ct. at 1960. "While the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'" *Id.* at 1959 (quoting *Connick*, 461 U.S. at 154).

The Sixth Circuit had the opportunity to address *Garcetti* in *Haynes v. City of Circleville*. In *Haynes*, the plaintiff was a policeman and canine officer for the city of Circleville, Ohio. 474 F.3d at 359. The Circleville police chief decided to cut the budget for the canine unit. *Id.* at 359-60. The plaintiff objected to the cutbacks, taking it upon himself to write a memorandum to the police chief criticizing the decision. *Id.* at 360. Following the plaintiff's termination, he sued, claiming that the adverse action was taken in retaliation for his criticism of the police chief's budget decision. *Id.* at 361. The plaintiff claimed that his criticism was speech protected by the First Amendment.

*Id.* The police chief argued that he was entitled to judgment as a matter of law on the ground of qualified immunity. *Id.* The district court disagreed and the police chief filed an interlocutory appeal. *Id.*

The Sixth Circuit defined the key issue in the case as being whether or not the plaintiff's expressions were made pursuant to his duties as a policeman and canine officer for Circleville. *Id.* at 364. The court held that the subject speech was not protected because the plaintiff was acting as a public employee carrying out his professional responsibilities. *Id.* The court noted that the plaintiff had been involved with the development of the canine program from its inception and that he had developed the standard operating procedure for the canine unit. *Id.* The court characterized the memo as that of a disgruntled employee upset that his professional suggestions were not followed as they had been in the past, stating that it reflected nothing more than "the quintessential employee beef; management has acted incompetently." *Id.* at 364, 365 (quoting *Barnes v. McDowell*, 848 F.2d 725, 735 (6th Cir. 1988)). The court found that the fact that the plaintiff communicated solely to his superior was an indication that he was speaking "in his capacity as a public employee contributing to the formation and execution of official policy" and not as a member of the public. *Id.* at 365 (quotation omitted).

The Sixth Circuit further clarified the *Garcetti* principles in *Weisbarth v. Geauga Park District*. In that case, the plaintiff, a park ranger for the Geauga Park District, filed a First Amendment retaliation action pursuant to 42 U.S.C. § 1983 after being fired from her job. *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 539 (6th Cir. 2007). The Geauga Park District had hired a consultant to evaluate the department because of morale and performance problems. *Id.* at 540. The consultant rode with the plaintiff in her patrol vehicle during one of her shifts as part of

8

his evaluation. *Id.* The consultant elicited plaintiff's views related to certain employment related matters. *Id.* The plaintiff claimed she answered the questions honestly, expressing a negative opinion of the management of the Park District. *Id.* The plaintiff was subsequently fired. *Id.* The plaintiff's retaliation claim was based solely on the conversation during the ride-along; she contended that as a result of her discussion with the consultant, he labeled her as a source of friction and developed a strategy for getting her fired, which ultimately led to her termination. *Id.* The district court dismissed the plaintiff's complaint, finding that the speech did not address a matter of public concern. *Id.* at 543.

On appeal, the Sixth Circuit, in addition to addressing the issue of whether the plaintiff's speech was a matter of public concern, addressed the issue of whether the plaintiff was speaking as a citizen. The court held that the plaintiff was not speaking as a citizen when she addressed the consultant. *Id.* The court found that the fact that speaking with the consultant was not part of the plaintiff's official duties was not determinative, stating that it was an "ad-hoc" duty that arose in the course of her employment and that such ad-hoc duties can fall within the scope of an employee's official responsibilities. *Id.* at 544. The court stated that the determinative factor was whether the speech "owes its existence to her professional responsibilities." *Id.* (quoting *Garcetti*, 126 S. Ct. at 1960).

In the instant case, the meeting at which Plaintiff gave the relevant speech was arranged by a member of the Parks Board after Plaintiff filed a complaint. Plaintiff was provided fifteen minutes to tell members of his concerns. Plaintiff informed the Board that Steele was demanding that Plaintiff allow him to participate in and be paid money from Plaintiff's part time business as a condition of employment and threatening Plaintiff with unemployment if Plaintiff did not agree.

9

Plaintiff also told the Board that Steele was treating female employees inappropriately and making sexual remarks to them, that Steele was falsifying grant reports, and that he was misusing and misappropriating funds and property of the Board for his own use. Plaintiff specifically mentioned Steele had been obtaining cash from the Board's credit card and using the park backhoe for his personal projects. Plaintiff also told Board members that Steele was intentionally submitting incorrect grant reports to the federal government concerning employees working on the trail project in order to obtain grant monies. Plaintiff gave the example of inmates signing statements that they were paid employees.

Here, as in *Weisbarth*, Plaintiff gave the relevant speech at a forum arranged by the employer at which the speech was invited. However, unlike in *Weisbarth*, the forum was provided in response to Plaintiff's filing a complaint against Steele, an affirmative action taken by Plaintiff. Additionally, unlike in *Haynes*, Plaintiff did not bring his complaints solely to his superior, *see Haynes*, 474 F.3d at 365; rather, Plaintiff first approached Murray City Hall and was then directed to the Parks Board personnel committee chair who later set up a meeting in which he could air his complaints. Although this Court was not provided with a detailed description of Plaintiff's employment duties, the Court's experience leads it to believe that Plaintiff's position as maintenance supervisor did not include overseeing grant reports. Likewise, the Court finds that Plaintiff's position did not include reporting his supervisor's misappropriation of the Board's funds and property. However, this Court finds that Plaintiff's position did include reporting sexual harassment. The Parks Department's Policy and Procedure Handbook contains a section on sexual harassment, which states, "Any employee that feels that a complaint is warranted shall file a written complaint with the Director." Thus Plaintiff had a duty to report Steele's sexual harassment of other employees if he felt that a

complaint was warranted.

Thus, unlike the situations in *Weisbarth* and *Haynes*, this Court cannot find that Plaintiff's speech concerning the grants owed its existence to Plaintiff's professional responsibilities. *See Weisbarth*, 499 F.3d at 544. Therefore, this Court finds that Plaintiff was speaking as a citizen and not in the more limited role of government employee when he made his statements concerning the grants and misuse of Board funds and property. *See Connick v. Myers*, 461 U.S. at 146. However, Plaintiff was speaking in his role of government employee when he made his statements concerning sexual harassment. This speech owed "its existence to his professional responsibilities." *Weisbarth*, 499 F.3d at 543. Plaintiff was also speaking as a government employee when he made his statements concerning Steele's threats towards Plaintiff's employment. This speech reflects a commonplace occurrence in the work force, a subordinate's frustration with his superior. Providing protection to these comments would be akin to constitutionalizing the employee grievance. *See Garcetti*, 126 S. Ct. 1959.

In the present motions, the parties only addressed the first step in the three-step test for analyzing a public employee's claim of First Amendment retaliation. Thus, this Court does not at this time have the opportunity to address the remaining factors of a retaliation claim. Therefore, viewing the facts in the light most favorable to Plaintiff, this Court finds that Defendants are not entitled to qualified immunity with respect to Plaintiff's retaliation claim concerning his speech relating to the grants. If the facts as ultimately found by the jury support Plaintiff's retaliation claim, a constitutional violation will have occurred. Further the right violated will have been a clearly established right of which a reasonable official would have known. *Hoover v. Radabaugh*, 307 F.3d 460, 469 (6th Cir. 2002) ("a reasonable official would know that terminating an employee with the

11

motivation, even in part, of quieting the plaintiff's public speech about illegal activities of the Department violates the Constitution"); *Chappel v. Montgomery County Fire Prot. Dist. No. 1*, 131 F.3d 564, 580 (6th Cir. 1997) ("All public officials have been charged with knowing that public employees may not be disciplined for engaging in speech on matters of public concern").

## II.     SUBSTANTIVE DUE PROCESS

Plaintiff alleges that the Board's termination of his employment violates his substantive due process rights. Defendants assert that this cause of action fails as a matter of law because substantive due process does not protect state created contract rights and the termination of public employment does not normally constitute a denial of substantive due process.

"The substantive component of the Due Process Clause protects those rights that are 'fundamental,' meaning those rights that are implicit in the concept of ordered liberty.'" *Young v. Township of Green Oak*, 471 F.3d 674, 684 (6th Cir. 2006) (quoting *Palko v. Conn.*, 302 U.S. 319, 325 (1937)). Absent the infringement of some fundamental right, the Sixth Circuit has held that "the termination of public employment does not constitute a denial of substantive due process." *Id.* (quoting *Sutton v. Cleveland Bd. of Educ.*, 958 F.2d 1339, 1350 (6th Cir. 1992)). As stated by the Eleventh Circuit:

> [A]reas in which substantive rights are created only by state law (as is the case with tort law and employment law) are not subject to substantive due process protection under the Due Process Clause because substantive due process rights are created only by the Constitution. As a result, these state law based rights constitutionally may be rescinded so long as the elements of procedural - not substantive - due process are observed.

*McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994) (internal quotations omitted), *quoted in Young*, 471 F.3d at 684.

Plaintiff asserts that government officials violated his substantive due process rights when

Steele unreasonably and unlawfully interfered with his side business by requiring Plaintiff to employ Steele in that side business as a condition of Plaintiff's continued employment with the Park Services. This Court finds that Plaintiff has failed to allege the infringement of a fundamental right. Fundamental rights recognized by the Courts include the right to reasonable care and safety while in government custody, to travel locally through public spaces and roadways, to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, and to bodily integrity. *See Bell v. Ohio State Univ.*, 351 F.3d 240, 250, 251 n.1 (6th Cir. 2003).

Therefore, this Court finds that Plaintiff has failed to state a claim for a substantive due process violation.

## III.   PROCEDURAL DUE PROCESS

To establish a procedural due process claim, a plaintiff must show he had a property interest of which he was deprived without due process of law. *Hudson v. Hudson*, 475 F.3d 741, 745 (6th Cir. 2007). Protected property interests do not emanate from the Constitution, but rather are "created and defined by existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).

Kentucky law controls the nature of the employment relationship between Plaintiff and the Parks Department *See Bishop v. Wood*, 426 U.S. 341, 344 (1976). In Kentucky, in the absence of a clear and specific agreement to the contrary, employment for an indefinite period of time is terminable at will by either party. *Shah v. Am. Synthetic Rubber Corp.*, 655 S.W.2d 489, 491 (Ky. 1983); *Prod. Oil Co. v. Johnson*, 313 S.W.2d 411, 413 (Ky. 1958). "An at-will employee is subject to dismissal at any time and without cause; consequently, an at-will employee cannot effectively

claim a protectable property interest in his or her job." *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 141 (6th Cir. 1997).

The Parks Department's Policy and Procedure Handbook states that all employees "are generally considered to be an employee at will and may be terminated anytime and for any lawful reason." Additionally, "[a]ll personnel initially appointed to an established position shall be considered as an 'introductory period' employee for a period of one year" and "may be dismissed by the Director at will during the original introductory period, unless otherwise provided by law." Plaintiff had only been employed by the Parks Department for a period of five months at the time of his termination. The Handbook specifically disclaims any contractual intent and notes that it is simply a guideline. The Handbook outlines a grievance procedure:

> Any employee who feels that they have been treated unfairly shall make their appeal in writing to the Director. The Director has three days to make a written reply to the employee involved. If the employee still feels dissatisfied with the decision of the Director, the employee may make a written appeal to the Park Board chairperson. The chairperson has three days to answer the appeal. If the employee still feels that displeased with said decision the employee may request a hearing before the Park Board. The hearing shall be conducted no later than two weeks after the employee makes the request. The employee and the park shall have the opportunity to be represented by legal counsel and call witnesses as necessary.

Following his termination, Plaintiff requested a hearing by letters from himself and his counsel, but no formal response was ever received from the Park Board. Plaintiff asserts that he was entitled to utilize the appeals process as stated in the Handbook.

The only evidence provided to this Court concerning Plaintiff's employment status is the Handbook and the fact that he had only been employed with the Parks Department for five months. The Handbook, while setting in place an appeals process, specifically disavows its status as a contract, stating that it is merely a guideline. Therefore, as there is no evidence of a clear and

specific agreement to the contrary, this Court finds that Plaintiff's employment was terminable at will. *See Shah*, 655 S.W.2d at 491; *Prod. Oil Co.*, 313 S.W.2d at 413. Hence, Plaintiff's procedural due process claim fails as a matter of law. *See Bailey*, 106 F.3d at 141.

## IV.   DEPRIVATION OF A LIBERTY INTEREST

Plaintiff asserts that he was stigmatized by the termination and its publication at an open public meeting and in the Board's minutes of October 28, 2005.

In certain cases, a person's good name or reputation may implicate a liberty interest protected by the due process clause of the Fourteenth Amendment. In *Ludwig v. Board of Trustees of Ferris State University*, the Sixth Circuit considered the claim of a basketball coach at a public university who alleged a deprivation of his due process rights in connection with disciplinary proceedings. 123 F.3d 404, 407 (6th Cir. 1997). The Court noted that while a reputational injury in certain circumstances may give rise to a liberty interest claim, the information disseminated must go beyond an allegation of poor job performance, holding that:

> [A] plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance. A charge that merely makes a plaintiff less attractive to other employers but leaves open a definite range of opportunity does not constitute a liberty deprivation. Rather to implicate the Due Process Clause, the employer must have made a statement in the course of the employee's discharge that might seriously damage his standing and associations in the community or that might impose on him a stigma or other disability that would foreclose his freedom to take advantage of other employment opportunities. A moral stigma such as immorality or dishonesty is required to show a deprivation of liberty.

*Id.* at 410 (internal quotations and citations omitted).

This Court finds that the publication in the Board's minutes that Plaintiff was terminated for "insubordination" does not rise to the level of a moral stigma such as immorality or dishonesty. Instead, insubordination amounts to, at most, malfeasance. Therefore, this Court finds that

15

Plaintiff's claim of a deprivation of a liberty interest fails as a matter of law.

## V.     FAILURE TO TRAIN, SUPERVISE, OR MONITOR

In his response to the pending motions, Defendant makes clear that he asserts this claim only against the Board, the City of Murray, and Calloway County. Thus the individually named Defendants are granted summary judgment as to this claim.

### CONCLUSION

For the foregoing reasons, Defendants Lovett, Bailey, Finnery, Cunningham, Imes, Lax, Stubblefield, Gingles, Thompson, Lawson, Hornback, Lamb, Elkins, and Steele's Motion for Partial Summary Judgment is GRANTED IN PART and DENIED IN PART. Defendants City of Murray, Massey, and Hudspeth's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

Defendants Lovett, Bailey, Finnery, Cunningham, Imes, Lax, Stubblefield, Gingles, Thompson, Lawson, Hornback, Lamb, Elkins, Steele, Massey, and Hudspeth are granted summary judgment as to Plaintiff's claims against them in their individual capacities for Plaintiff's claims of substantive due process violation, procedural due process violation, deprivation of a liberty interest, and failure to train, supervise, or monitor. Plaintiff may proceed against these Defendants in their individual capacities on his First Amendment retaliation claim based only on his speech concerning Steele's falsifying of grant reports and Steele's misuse of the Board's funds and property for his own use.

An appropriate order shall issue.